Greg Haefner is here for the appellant's Oxford House, and Stanley Blackman is here for the City of Dothan. Mr. Blackman and Mr. Haefner, you may begin your argument. Good morning, Your Honor. I'm Greg Haefner. I represent the appellant's Oxford House. Oxford House requested a reasonable accommodation in the City of Dothan to meet its business license requirement and put the utilities in the Oxford House names. In drawing all reasonable inferences in the light most favorable to Oxford House, there is more than enough evidence of necessity to reverse the district court and find as necessary as a matter of law for Oxford House. This court, by necessity, supports alleviating the effects of a disability and addressing the needs created by the disability, and it supports that disability with alcoholism and drug abuse. Here, the disability is the same, and the need goes right to maintaining sobriety. Here, the need is living in an Oxford House under the Oxford House model and avoiding dishonesty. Both have a therapeutic basis, and the therapeutic basis of living in an Oxford House is not disputed. Its founder has tendered evidence in the record here explaining how the Oxford House model provides a sober living environment for the residents in recovery and why it's required that the utilities and all accounts be in the house name to do so. Where is the evidence that the therapeutic needs of the residents are harmed by the necessity to obtain a business license if it's the employees and not the residents who apply for the license? Well, the unopposed expert that Oxford House had in this case was asked that question. He said, he was asked by the city's attorney in his deposition, what if someone else applies for the license? And he said, quote, I don't think that changes my opinion. The house still gets a license, and it's still the law for the residents. And he went on to explain, the city's attorney asked him, well, you know, isn't it okay, just a little bit of a dishonesty? And he said, you know, maybe for you or me on some subject that might be the case, but for recovery from addiction, drug addiction, alcoholism, absolute honesty is integral and necessary. And, you know, he used the example like a little bit, a little bit of wine for at dinner with, for somebody who's not an alcoholic would be just fine. But for an alcoholic, just a little bit would be detrimental. And he explained how the element of honesty, the necessity of honesty for a person in recovery is absolutely essential. And obtaining the business license is dishonest because the Oxford House is not a business. It's based on a family environment. All of the other Oxford houses in the other cities, they have business licenses, right? No, none of them do. Absolutely. None of them do? Not a single one. Okay. Not in the country and not in the state of Alabama. What about the assertion in the record that they do in order to receive utility service in their organizational names? No Oxford House has a business license. And that's in the record. Maybe what you're referring to, Your Honor, is the... They've agreed, I think it is, to be designated as businesses in order to receive utilities in the name of the Oxford House. How is that different? That's what the city wants. The city wants the Oxford House to be designated a business and obtain a license to get utilities in their name. And we're asking that they waive that requirement. Is it important for this definition that Oxford House doesn't think of itself as a business or that it qualifies as a business according to the city's definition? It doesn't think of itself as a business. The expert went about explaining how for the Oxford to certify themselves as a business and to think of themselves as a business is not true. The Oxford House model is very unique compared to other recovery housing. It really has three elements. One is that it's self-governed by the residents democratically. Two is financially self-supporting by the residents, equal contributions of the rent and the utilities. And three, it immediately expels any resident who returns to using drugs or alcohol inside or outside the house. And that third component guarantees a sober living environment. And that sober living environment is probably the most key thing for Oxford House because there is no statute. But the Oxford House, it doesn't lease property in the name of the residents. It leases property in the house name. They have an employee identification number from the Internal Revenue Service. They elect officers and they hold weekly meetings. That seems to be pretty consistent with the fact that they're categorized as businesses as opposed to families, doesn't it? They have weekly meetings and they govern themselves democratically and they've chosen to call. They have officers? Yes. And they've chosen to call those officers the names they do and that's the model in how they democratically govern themselves. The issue really too here, Your Honor, is not that the city made a lot of effort in the record to try to say that Oxford House qualified as a business under their definition of a business. Well, if we were just disputing whether Oxford House met the definition of a city code, we wouldn't have jurisdiction here in front of the court. We are saying if you're going to call us a business, that's your choice. But we want to have this licensing requirement waived as an accommodation because denominating ourselves as a business is not true and it's detrimental to the residents. They operate more as a family. But not true by whose standard, right? I mean, I think if the three of us start a business that qualifies as an LLC, but we don't think of it as an LLC. We just think of it as three judges getting together to have a business. Does that mean that we can say that we're not an LLC because we don't think of it the same way the government does? Yeah, you probably could. But I think that in this case, if the three people that were doing that and said we don't want to be called a business, then I would say, well, why not? And you would say, well, because we have a disability, the needs for which are going to be alleviated if you don't call us a business. And that's the distinction here. So I guess, do you think that Oxford House qualifies as a business under the terms of the city's definition? Well, I'll say this. The answer within the record is yes because the city's definition is long and it has several parts. The first parts are kind of like your average business. They're doing something for a profit. They're providing a service or selling something and getting remuneration for it. And they have a final definition of business, which is called any other activity conducted in the city. And that is the definition that the city used to capture the Oxford House use. So your argument then is, yes, we're a business, but we're entitled to an accommodation under the Fair Housing Act? Yes, Your Honor. Because for therapeutic reasons and for financial reasons? Yes, and primarily for therapeutic reasons. Being declared a business is dishonest for the residents. They're not a business. The Oxford House model is based on a family environment and the residents pooling together their own resources. But I thought you just told me you concede that they qualify as a business under the city's definition but you're entitled to an accommodation as a not-for-profit based on your need for the residents' need, therapeutic and financial reasons. Yes. That's the argument that you're making? You're entitled to an accommodation for those two reasons? Yes. Is there any evidence in the record that the insurance premiums and costs are going to be passed on to residents if they have to get a business license? Yes. The landlord for the one Oxford House said that in his affidavit that his insurance premiums would go up. He would be switched from a residential to a commercial policy. Who said that? Excuse me? Who said that? Michael Ershnick. He is the landlord for Oxford House Coop, I believe. He tendered his last affidavit wherein he said that he would pass on the increased insurance premiums that he would face to the residents in the form of increased rent. But there's no evidence that the insurance premiums would increase though, right? He got a quote for his insurance. He went to his insurance agent and said, this is classified as a business. Is my current residential rental policy still effective? The insurance agent said, no, you would need a commercial policy. And that policy was put into the record along with his current residential policy. And so the insurance premiums would increase? Yes, sir. By how much? They would go up by 12%. The dollar amount, I think it went, they doubled. Excuse me, not doubled. They went up from, I don't have the exact figures, Your Honor. Okay. But they went up 12% and he stated that the policy, the premium increase is in the record with this affidavit and his statement that he would pass that on to the residents and increase rents there. All right. Thank you, Mr. Haefner. Mr. Blackman, on behalf of the City of Dothan. Thank you, Your Honor. Stanley Blackman along with Jay Wright for the City of Dothan, Alabama. I'd like to start with this idea of the Oxford House model. Because I think it's important in considering the assessment to realize that this case does not involve a restriction on where, when, or how, or whether a group home can operate in the City of Dothan. So the question of whether Oxford houses in particular or group homes in general are beneficial is not the question that was before the district court, it's not the question before this court, and it's not the question that the reasonable accommodation claim here raises. Instead, the question here is whether the specific requested accommodation, waiver of Dothan's business license rule, is therapeutically necessary. And as this court put it in the Schwartz v. City of Treasure Island case, that question is whether that accommodation contributes in a meaningful way to the addiction recovery of the Oxford House residents. That's the question that they had to put on evidence of, and that's the question that the district court said there was no evidence of. And that's because as they have framed the therapeutic need in this case, it's that recovery under their so-called model promotes accountability. They say that it's dishonest because they are not a business, despite agreeing that they meet Dothan's definition of business under the city code. And then they say that it is dishonest for the residents to state or certify that they're a business when they're not. As their expert, Dr. Stuart Gitlow, framed it in his report, not having to state that they are a business is what provides the positive effect for the residents. But as the district court correctly pointed out here, there is no evidence in this record that the residents have to state or certify anything. Instead, what happened in this case is that it was Oxford House Inc.'s employees, Vanessa Phelps and Wesley Ford, who tried to apply for the utilities accounts, who would have served as the points of contact with Dothan, and who would have had to fill out these business licenses. And so to respond to Your Honor's question earlier about is there any evidence in the record, a note that he says that Dr. Gitlow said he didn't change his opinion, but if you look at Dr. Gitlow's deposition, what he says is, my conclusion was very specific. Asking the residents to state their business is what causes the problems. So, again, there is no evidence in this record that any resident has to make any so-called dishonest statement in the first place. So going from there to what they have kind of alluded to as an alternative argument, which is even dishonest statements about the residents creates a therapeutic need for the accommodation. The district court correctly pointed out that there's simply no evidence that the residents would even know about the statements in the business license. In fact, Oxford House's counsel admitted at the summary judgment hearing here that the only reason that the residents knew about the business licenses in this case is because they were told about it for purposes of litigation. But even if there were evidence of knowledge, there simply is no evidence that it's therapeutically necessary for that accommodation to be given. And I also want to touch, Your Honor, on the question about financial necessity. There is no evidence in this record that obtaining the business license would cause an increase in the insurance premiums here. As the district court pointed out, the policy or the quote that was obtained by Michael Ershick in this case was not an apples-to-apples comparison of what Dothan's business license rule would require. Here what they have now is a $300,000 policy limit on a single-family residence. The quote that they obtained was a commercial license for a group home with a higher liability limit for my different insurance carrier. And the district court here at the summary judgment hearing asked, well, why wouldn't you just get a policy or a quote where the only thing different is now you've obtained a business license? And the response was, well, the landlord didn't want to ask his insurance carrier about that. So there is no evidence in the record of an apples-to-apples comparison that the insurance premiums would increase or that the residents couldn't afford it. There's no evidence of that, right? There is no evidence of that. That's right, Your Honor. What wouldn't fall within the city of Dothan's definition of business? It seems pretty broad. Wouldn't a family renting a house actually qualify as a business under that definition? Well, I suppose that it depends on whether they are obtaining a business license under a different section of Dothan's Code. Here if a family is renting a house and they say we want to establish utility service at that house in the name of family LLC, then that family will have to obtain a business license. That is Dothan's policy that any time you establish it in an associational name, you must first obtain the business license. So if you had it in a trust, you'd have to do a business license? Your Honor, I think the answer to that one is I think if it's an association, if the city considers a trust application or if you say the trust of such and such, if that's considered an association's name, you would have to obtain a business license for that. But I confess that I don't know if the city would consider a trust. I know that's a very hypothetical question. I'm not sure why they would consider a trust if that would be considered an associational name. And so I think here, Your Honors, the district court appropriately considered the necessity element because it recognized that there is simply no evidence in this record that the accommodation that they want, that is, just don't make us get a business license contributes in any way, much less a meaningful way to the resident's recovery. And so the district court should be affirmed in its necessity finding for those reasons. But I want to briefly touch, Your Honors, on the question of equal opportunity because I noted in their reply brief they don't really respond to the arguments from the Fifth Circuit and Providence Health and the Seventh Circuit and Good Shepherd Manor that recognizes that reasonable accommodation claims simply are not actionable with respect to these sorts of utilities. Because as those courts recognized, cutting off the water or cutting off the utilities to a home prevents anyone from living in those residences, whether they are disabled or not. And so there's not an equal opportunity issue with a utilities claim under the reasonable accommodations portion of the Fair Housing Act. What they say in their reply brief is that utility services are actionable, and they cite to an Eleventh Circuit case that recognizes that, but I think that that misses the point. No one's saying here that if Dothan intentionally deprived utility service to group homes that would serve the disabled that they couldn't bring a Fair Housing Act claim. The point there, though, is that those are actionable under maybe disparate treatment or disparate impact provisions of the Fair Housing Act, not the reasonable accommodations portion. And so they don't cite any case that has ever disagreed with the Fifth Circuit or with the Seventh Circuit in the fact that these simply are not actionable claims under the reasonable accommodation provision in the first place. So the Fair Housing Act, Your Honors, does not require a local government to change a neutral policy just because the plaintiff does not want to comply with it. That's what we have here. Oxford House admits that it can obtain these business licenses. It admits that its residents can do so, and it admits that it doesn't hinder the residents' recovery in any way. This court should affirm the district court's judgment, and unless the panel has any additional questions, we'd rest on the briefs. It's free? The business license is free? You don't have to pay for it? That's correct, Your Honor. For nonprofits like this, the business license is free. Are there any other Oxford Houses in Alabama that are listed as businesses on their utility accounts? Yes, Your Honor. At least 20 other Oxford Houses are listed as corporations, businesses, or LLCs on the utility account. I thought he said there weren't any others. Your Honor, it is undisputed in the record that we subpoenaed these from other Oxford Houses in the state, and on those utilities accounts, they are listed as corporate accounts, LLCs, or as businesses. All right, we have your argument. Thank you, Mr. Blackmon. We'll hear from Mr. Haefner on rebuttal. Your Honor, just as a last point, right before the city's 30B6 deposition of Oxford House, they supplemented their discovery the day before with about 2,000 pages. They subpoenaed all the utility bills for all the Oxford Houses in the state of 87 years back in the state of Alabama. And I think six or so, there were several accounts that either were in the name of a person or it said Oxford House. And every Oxford House adopts its own name. And so they were listed as Oxford House Pineapple LLC. And Oxford House's deponent was asked and presented with those, you know, didn't you get a business here or didn't the house get a business license there, aren't they a business? And she said, no, none of those Oxford Houses, as I told the court, and this is where the basis that I'm making the statement, ever has ever applied for a business license ever anywhere. And furthermore, none of those LLCs or none of those accounts that are denominated with an ink after the end or anything are registered with the Alabama Secretary of State. They are not businesses. So she explained, well, how did they get in that name then? And she said, look, we go to the counter and apply for utilities. And we tell them that this is Oxford House Dothan and, you know, I'll fill the form out. And how the person at the utility counter ultimately puts it into their system and it gets spit out is not up to us. And that's what happened in those few cases. You also want to address the equal opportunity issue that was brought up. I think the city misunderstands what an equal opportunity is under the Fair Housing Act. An equal opportunity is when the disabled have a greater burden that is unequal than a similarly situated group of non-disabled people. And in this case, the district court adopted, essentially, the arguments we made for necessity, that we can't have a business license and we have to have utilities in the house name, because they came up with alternatives. And those alternatives are premised on both of those things. But they fail for several reasons, primarily because they deny an equal opportunity to use and enjoy housing. Alternative number one the district court came up with is they said, well, if you don't want a license, then just have the landlord put the utilities in their name. Well, that's an unequal opportunity because it requires the Oxford House residents to find not only the house they want to rent, but find a landlord who's willing to put the utilities in their name and build a house for it. And that's not the norm under, you know, that's something that the Oxford House disabled residents are burdened with that a similarly situated group of people aren't. But in these other cases where you say the entity is not really registered as a business, who pays for the utilities in that circumstance? Well, in all circumstances, the Oxford House itself pays for its rent and utilities out of its own house bank account. And that is the reason why Oxford Houses pick a name when they start. And they enter a lease with the landlord, a residential lease under that name. In this case, the three Oxford Houses were brought into the lawsuit by the city. They're called Oxford House Dothan, Oxford House Coop, and Oxford House Dodge. It's in the caption of the case now. And they go. And the leases for each of those houses are also in the record. They're attached to an affidavit. And the leases, that's the tenant. That's it. And then somebody signed on behalf of that, on that name as a tenant. And they have bank accounts. They go to the bank. Right, but that's my point. If someone signed, it's not as if Oxford House is an entity that can sign for things, right? There was a hand of a person that signed that lease. Why can't that person also sign for the utilities? Yeah, they want to. But under the name, without getting a business license, they want to sign for Oxford House Dothan, without getting a license, just like they have in many other cities, like all the other cities in Alabama. And the reason that Oxford House, every Oxford House sets up the bank account in their own name, like Oxford House Dothan. And in order to get a bank account, because of federal banking laws, you either have to provide a social security number or some EIN. And so they go through and get that for that purpose only. No Oxford House files income taxes, pays any taxes. They're not a business. But they have an EIN, right? They do. You get a bank account for that reason only. I mean, do families have EINs generally? Well, families, I would imagine that the mother or father would use their social security number to get a bank account. Right. And the reason the Oxford House is everything is in the house name and not an individual, and this goes to the necessity, is that guarantees a sober living environment, which is the primary benefit of living in an Oxford House. If somebody returns to using drugs or alcohol, they're out. There's a zero tolerance. But there's nothing about registering as a business that would create a different rule for that, is there? No. Well, in this sense, they said if you want the utilities in the Oxford House name, you have to get a business license. Otherwise, put it in someone else's name. And we're saying, well, just waive that business license because we need them in the house name, not a person's name. If a person's name was on the lease and they got high and everybody voted them out, they would say, I'm not leaving. It's my house. You can't kick me out of the house that I'm renting. If they were on the bank account and not the house, they would say, well, fine, I'm leaving. I'm taking all the money. If they're on the utility bills, they're saying, good, and I'm shutting the power off and I'm not paying it. So that's the need under the Oxford House model to have the utilities and all accounts in the house name. And the district court acknowledged that by saying, well, here are these two alternatives. If you don't want it in an individual's name, put it in a landlord's name. Well, that fails. And it denies equal opportunities because it puts an extra burden on an Oxford House that's not on a similar group of people, an unincorporated association of non-disabled people who don't have the need to waive a license to get a lease. And the other alternative that the district court opposed was this, well, here's how you can get around the license. Have someone else apply for it. And that premise is based on the court acknowledging our expert, who was unopposed, stating how honesty is key to recovery. And this, even though it may not seem big to somebody, it is an issue. And the court said, well, have someone else apply. But that's still a lie, our expert said. So each individual family would have to apply for utility service if it's not a business then, right? How do they get utility service? You mean like yourself, if you mean? Well, how many Oxford House facilities are there within this umbrella? In the United States? In Dothan, Alabama. In Dothan, there's three that are subject of the three. Three? Okay. So if they're not businesses, they can still get utility services. Each individual one would have to apply for utility services, right? Correct. An individual in the house would have to put it in their name. And if that individual came home drunk one night and everybody said, you're out, because that's how it works. They could say, well, you know what? You don't have utilities anymore. I'm out. I'm turning them off. Same with the bank. If that person was to avoid getting a tax ID, well, let's put it under this guy's Social Security. And he got high. They said, you're out. And he would be draining the bank account next week if he was on the lease because the landlord said, I'm not doing that. Then he would say, I'm not leaving. This is my house. You guys get out. So that's the need. And it's unique to the Oxford House model, but it goes right to the resident's disability, which is to maintain a sober living environment. Does anyone who's not in recovery live in these houses? No. That's a very good question. Oxford Houses are, everybody in it is in recovery. And they have a free rule. They self-govern. They financially self-support. They don't pay anybody any money. They don't get any outside funds. And they immediately expel anyone who uses drugs or alcohol because there are no services. There's no staff coming in, supervising people, providing recovery services. The main benefit is that sober living environment. And to maintain it, there's a necessity that the utility accounts and all accounts are in the house name instead of an individual's name. And we've taken you way over, but last question. There was an assertion in the record that the residents would never even need to know that the house was registered as a business. Who would register the house as a business if it came to that? Is there an Oxford House umbrella organization that could do so? There is an organization, but they don't do that. They don't register because they don't believe that Oxford Houses are businesses. And they don't get involved setting up every Oxford House. The court asked. They said, well, if we just have someone else lie, in this case, an Oxford House employee, which about half the Oxford Houses, it's in the record, are set up by Oxford House employees. Other times, groups of people in recovery can set up their own Oxford House. And the court said, well, in this case, the Oxford House employees went to the utility office to set up the account for the house. It was new. And they said no when they were asked to fill out a business license. But the court said, well, why can't they just do that? Nobody will know. Well, see, this is what I don't understand. If there are 20 other Oxford Houses in Alabama listed as businesses on their utility accounts, why couldn't these three Oxford Houses in Dothan, Alabama, follow the same procedure that the 20 others followed? Because these three didn't. All those that you're talking about, those 20, none of them applied for a business license, not a single one. They were erroneously denominated as a business by the utility account after they went in and set it up under their own name. None of them applied for it. And all we're asking for is a waiver of applying for a business license. And that's the distinction. All right. I think we have the argument. Thank you, counsel. Court is in recess until 9 o'clock tomorrow morning. All rise.